**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **KEVIN LANGELLIER**, Individually and §<br>On Behalf of All Others Similarly Situated, §<br>§<br>*Plaintiff*, §<br>§<br>vs. §<br>§<br>**BREVARD EXTRADITIONS INC.** §<br>**d/b/a U.S. PRISONER TRANSPORT** §<br>§<br>*Defendant*. § | **CASE NO. 6:19-CV-1316 (RBD)** |

<u>**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND**</u>
<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

COMES NOW Defendant Brevard Extraditions Inc. d/b/a U.S. Prisoner Transport (USPT), and files its Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof, submits as follows:

Respectfully submitted,

By: *<u>/s/ Elizabeth H. Joiner</u>*
     Elizabeth H. Joiner, Florida Bar No. 0107843
     **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
     Post Office box 41099
     Jacksonville, Florida 32203
     Telephone: (904) 356-8900
     Facsimile: (904) 356-8200
     <u>ejoiner@constangy.com</u>

     Gregory J. Northen, Ark. Bar # 2011181*
     Trial Attorney
     Abtin Mehdizadegan, Ark. Bar # 2013136*
     Trial Attorney
     **CROSS, GUNTER, WITHERSPOON & GALCHUS, P.C.**
     500 President Clinton Avenue, Suite 200
     Little Rock, Arkansas 72201
     Phone: 501-371-9999 / Fax: 501-371-0035
     E-mail: gnorthen@cgwg.com / abtin@cgwg.com
     *\*Pro Hac Vice Application Forthcoming*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

III.  ARGUMENT ................................................................................................................. 3

      A.    Dismissal Must Be Granted Because Defendant is Exempt from the FLSA's Overtime Provisions as an Entity Subject to the Secretary of Transportation's Authority .................................................................................. 5

            1.    USPT is a Motor Carrier Regulated by the DOT and FMCSA, Subject to the Secretary of Transportation's Authority, and Directly Engaged in Activities that Affect the Operational Safety of Motor Vehicles in Interstate Commerce. ................................................................................. 7

            2.    Transporting Prisoners in Interstate Commerce Directly Affects the Operation of and Safety of Motor Vehicles in Interstate Commerce Covered by the MCA. .......................................................................... 11

            3.    Alternatively, USPT is Subject to the Secretary's Authority Pursuant to the Interstate Transportation of Dangerous Criminals Act of 2000, Excluding Plaintiff from Overtime Compensation. ................................. 12

                  a.    An Extradition Agent is Subject to the Secretary's Power to Set Qualifications and Maximum Hours of Service Exempting Plaintiff from Overtime. ............................................................................... 13

                  b.    Plaintiff's Alleged Duties Required Transportation of Prisoners in Interstate Commerce, Directly Affecting the Safety of Motor Vehicles. ...................................................................................... 14

      B.    Plaintiff's Complaint Must Be Dismissed Because he Failed to Assert Sufficient Facts to Establish He is Entitled to Overtime Compensation as a "Covered Employee" Under 29 U.S.C. § 207. ................................................... 15

      C.    The Court Should Dismiss Plaintiff's Recordkeeping Violation Claim Because There is No Private Cause of Action for Alleged Violations of the FLSA's Recordkeeping Requirements............................................................. 17

      D.    Plaintiff's Amended Complaint Must Be Dismissed Because he Failed to Assert Sufficient Facts to Establish a Plausible Claim for Relief Under 29 U.S.C. § 206............................................................................................................ 18

IV.   CONCLUSION ............................................................................................................ 19

## I.     <u>INTRODUCTION</u>

On July 17, 2019, Plaintiff filed his Complaint and Demand for Jury Trial (ECF No. 1) against Defendant and spuriously raised allegations that Defendant violated the Fair Labor Standards Act (FLSA) by failing to pay him overtime at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty in a work week. ECF No. 1, ¶ 1. Plaintiff filed this lawsuit as a collective action on behalf of a putative class of drivers.

USPT filed a Motion to Dismiss Plaintiff's Complaint explaining why Plaintiff's Complaint failed to bring forth any plausible claim for relief. *See* ECF No. 9. Rather than responding, Plaintiff filed an Amended Complaint on August 19, 2019 and added a claim for alleged unpaid minimum wages. ECF No. 19. Plaintiff's Amended Complaint fails to add any facts or law resolving its legal and factual deficiencies.

Accordingly, USPT now moves the Court for an Order dismissing Plaintiff's Amended Complaint because Plaintiff, who purports to seek relief on behalf of others alleged to be similarly situated for alleged overtime violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA), has once again failed to state a plausible claim for relief. Specifically, Plaintiff's Amended Complaint must be dismissed because: (1) he is exempt from the overtime pay requirements of the FLSA under the Motor Carrier Act (MCA) Exemption found at 29 U.S.C. § 213(b); and (2) Plaintiff was not a "covered employee" under 29 U.S.C. § 207 pursuant to the SAFETEA–LU Technical Corrections Act (Corrections Act) of 2008, Pub. L. No. 110–244, 122 Stat. 1572 (2008) (codified in 29 U.S.C. § 207).

For the reasons discussed herein, Plaintiff's Amended Complaint cannot survive scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   <u>FACTUAL BACKGROUND</u>

USPT is engaged in the business of intrastate and interstate prisoner transport. *See* PRISONER TRANSPORTATION SERVICES, LLC-CONTROL U.S. CORRECTIONS, LLC D/B/A U.S.C., 81 Fed. Reg. 122, 41369 (June 24, 2016) (Notice by the Surface Transportation Board tentatively approving and authorizing finance transaction) *available online at* https://www.govinfo.gov/content/pkg/FR-2016-06-24/pdf/2016-15009.pdf (last accessed September 7, 2019). In doing so, USPT employs drivers to perform transportation services of prisoners for requesting facilities and agencies across the United States. *Id.* Drivers are authorized to take custody, transport, and house prisoners in route to the requesting agency and/or transfer facility. *Id.* USPT's fleet generally consists of passenger vans capable of transporting up to 14 passengers. *Id.* The Federal Motor Carrier Safety Administration (FMCSA) classifies USPT as an interstate motor carrier for passenger transportation. *See* FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, SAFER WEB - COMPANY SNAPSHOT BREVARD EXTRADITIONS INC., FMCSA MANAGEMENT INFORMATION SYSTEMS *available online at* https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=1758570&original_query_string=US%20PRISONER%20TRANSPORT (last visited September 7, 2019). USPT has been issued a Department of Transportation (DOT) number (DOT# 1758570). *Id.* USPT has been issued a FMCSA carrier registration (MC-643115), which gives USPT authority to engage in interstate commerce. *Id.* The issuance of its DOT number and FMCSA registration are provided under the Secretary of Transportation's authority. USPT's prisoner transportation drivers are subject to the Secretary of Transportation's authority, specifically the Secretary's power to set maximum hours of service and qualifications pursuant to 49 U.S.C. § 31502. The ability of the

Secretary to assert authority over USPT and nature of Plaintiff's employment, subject USPT and Plaintiff to the MCA, which excludes certain employees from overtime compensation. Consequently, and for the reasons that follow, Plaintiff's Complaint must be dismissed with prejudice.

### III.   ARGUMENT

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides the applicable standard of pleading in federal court and requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all reasonable factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, a complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

Moreover, to survive scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts asserted in the complaint must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the

factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

Furthermore, if, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal as authorized by Rule 12(b)(6) is appropriate. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Watts v. Graves*, 720 F.2d 1416, 1422–23 (5th Cir. 1983).

Plaintiff alleges that USPT is a covered entity under the FLSA because USPT engaged in commerce or in the production of goods for commerce. *See* ECF No. 19, ¶¶ 13, 18–19, 25. While USPT readily admits it is engaged in interstate commerce, Plaintiff and the proposed collective class are subject to the authority of the Secretary of Transportation and therefore exempted from overtime compensation requirements under the MCA Exemption: (1) based on USPT's status as a motor carrier and operating commercial motor vehicles in interstate commerce; and (2) pursuant to the Interstate Transportation of Dangerous Criminals Act of 2000 (Jeanna's Act). In addition, Plaintiff failed to show he was a "covered employee" under the FLSA, and, is therefore, not entitled to overtime compensation. Accordingly, these exceptions warrant the dismissal of Plaintiff's overtime claims. Further, Plaintiff has failed to allege *any*

factual allegations, much less allegations sufficient to establish a claim for unpaid minimum wages pursuant to Fed. R. Civ. P. 8(a). As such, this claim, too, must be dismissed.

**A.** **Dismissal Must Be Granted Because Defendant is Exempt from the FLSA's Overtime Provisions as an Entity Subject to the Secretary of Transportation's Authority.**

Plaintiff's claim that USPT failed to properly pay overtime in accordance with the FLSA is wholly without merit because Plaintiff is excluded from any such overtime compensation. The FLSA requires employers to pay overtime to certain employees who work over forty hours in a workweek, the FLSA also exempts certain employers and/or employees from its overtime requirements. 29 U.S.C. §§ 207, 213(b). Specifically, the MCA Exemption provides an exception to the overtime requirements for "any employee to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1); *see Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009).

The Secretary may prescribe requirements for qualification and maximum hours of service of employees of, and standards of equipment of, a motor carrier, when needed to promote safety of operation and equipment of a motor carrier. 49 U.S.C. § 31502(b)(2). As such, the Secretary has the power to establish maximum hours and qualifications sufficient to warrant the application of the MCA Exemption for employees who:

> (1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a). Both factors must be established for the MCA exemption to apply. *Id.* Only employees employed by carriers as drivers, driver's helpers, loaders, and mechanics, fall into the class of employees performing duties directly affecting such "safety of operation" to satisfy MCA. 29 C.F.R. § 782.2(b).

Further, "safety of operation" as used in Section 204 of the MCA means "the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce, and that alone." 29 C.F.R. § 782.2 (emphasis added). The applicability of the motor carrier exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." *Walters*, 575 F.3d at 1227. "There are two requirements for an employee to be subject to the motor carrier exemption. First, his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA. Second, the employee's business-related activities must "directly affect[ ] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Id. (citing *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181–82 (11th Cir.1991)); *see also* 29 C.F.R. § 782.2(a).

For the MCA Exemption to apply there must be (1) an employee employed by a carrier subject to the Secretary's authority under 49 U.S.C. § 31502; and, (2) employed as a driver, driver's helper, loader, or mechanic for the transportation of passengers or property in interstate commerce. However, the MCA Exemption can also apply to a company that is not by definition a "motor carrier" pursuant to the Interstate Transportation of Dangerous Criminals Act of 2000 (Jeanna's Act), which gives the Secretary the necessary power under 49 U.S.C. § 31502 to trigger the MCA Exemption analysis. Jeanna's Act effectively brings privately-run prisoner

transportation companies within the gambit of the MCA by specifically directing authority to the Secretary to set maximum hours of service and qualifications for these companies. Further, under the MCA inquiry analysis, a driver transporting prisoners would qualify as affecting the operation and safety of motor vehicles in interstate commerce.

As set out below, USPT is subject to the Secretary's authority, therefore, Plaintiff is excluded from overtime compensation under the MCA Exemption because, (1) USPT is a motor carrier engaged in interstate commerce that Plaintiff transported passengers for, via commercial motor vehicles; and, (2) pursuant to Jeanna's Act, which grants the Secretary authority to set hours of service and qualifications for USPT, a privately-run prisoner transportation company engaged interstate commerce. As such, Plaintiff is excluded from the FLSA's overtime requirements under the MCA Exemption, and his Complaint should be dismissed.

      **1.**      **USPT is a Motor Carrier Regulated by the DOT and FMCSA, Subject to the Secretary of Transportation's Authority, and Directly Engaged in Activities that Affect the Operational Safety of Motor Vehicles in Interstate Commerce.**

Plaintiff drove large passenger vans transporting prisoners via public highways for a licensed and registered motor carrier–USPT–authorized to engage in interstate commerce through the Secretary's authority. USPT's status as a motor carrier, and Plaintiff's alleged activities leave no doubt that the Secretary possessed the authority to set the maximum hours of service and qualifications requirements for Plaintiff per 49 U.S.C. § 31502, to exclude Plaintiff from overtime compensation under the FLSA pursuant to the MCA Exemption.

USPT is subject to the Secretary's jurisdiction, thereby making its employees subject to the prescriptions set by the Secretary for maximum hours of service and qualifications. The first prong of the MCA Exemption inquiry is to which class USPT, Plaintiff's former employer, belongs. 29 C.F.R. § 782.2(a). USPT must fall within the "motor carrier" employer class for the

MCA exemption to be possible. See 29 C.F.R. § 782.2. A "motor carrier" is a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102(14). The Secretary has specific jurisdiction over the transportation of passengers by a motor carrier in interstate commerce, 49 U.S.C. § 13501, such that the Secretary has the power to prescribe requirements for qualifications and maximum hours of service for employees employed by a motor carrier engaged in interstate commerce. 49 U.S.C. § 31502.

The Eleventh Circuit has held that in order "[t]o be subject to the Secretary of Transportation's jurisdiction pursuant to the MCA, a motor carrier must be engaged in interstate commerce." *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 714 (S.D. Tex. 2014. "However, [t]he amount of participation [in interstate commerce] is not determinative of whether a carrier is exempt from the overtime compensation requirements of the FLSA." *Barefoot Mid–America Dairymen, Inc.*, 826 F. Supp. 1046, 1050 (N.D. Tex. 1993), *aff'd*, 16 F.3d 1216 (5th Cir. 1994)). The Fifth Circuit determined that for the MCA Exemption to apply, the Secretary "need only possess the power to regulate the employees at issue; it need not actually exercise that power." *Vanzzini*, 995 F. Supp. 2d at 715 (quoting *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472 (5th Cir. 2010)).

Plaintiff admits that his job duties as an Extradition Agent for Defendant included the transport of inmates in sufficiently-large passenger vans. *See* ECF No. 19, ¶¶ 20-26. Plaintiff further acknowledges he was engaged in interstate commerce. *Id.* at ¶ 25. Thus, Plaintiff's own factual assertions establish that Defendant is a "motor carrier" engaged in interstate commerce.

Moreover, USPT holds a DOT License and an FMCSA registration; it uses vehicles whose weight or passenger capacity falls within the authority of the MCA ("commercial motor vehicles"); and it is subject to regulation by the DOT and FMCSA. USPT's DOT number and

FMCSA registration, are indications that USPT operates vehicles in interstate commerce subject to the authority of the Secretary, and that the Secretary not only possesses the authority, but has actually exercised such authority over USPT. Evidence that a carrier has a permit or license from the Department of Transportation is sufficient to prove jurisdiction. *See Vidinliev v. Carey Int'l, Inc.*, 581 F. Supp. 2d 1281 (N.D. Ga. 2008); *see also Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) ("Most importantly, ACLM was licensed by the DOT, has the FMCSA authorizations necessary to be an interstate motor carrier, and was audited in the past by the DOT. As we have previously noted, the fact that a company holds these kind of authorizations indicates that the DOT has exercised jurisdiction over it.").

In properly dismissing Plaintiff's Amended Complaint, the Court can and should take judicial notice of the fact that USPT's license from the DOT and FMCSA registration is sufficient to prove jurisdiction. FED. R. EVID. 201(b)–(d) (The court may take judicial notice an adjudicative fact is not subject to reasonable dispute in that it is capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned.). At the Rule 12(b)(6) stage, the Eleventh Circuit Court of Appeals has stated that it "primarily consider[s] the allegations in the complaint," but "[t]he court is not [always] limited to the four corners of the complaint." *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (citing *Long v. Slaton*, 508 F.3d 576, 578 n. 3 (11th Cir. 2007)). "We have held that a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Id.*; *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

It is clear the Secretary possesses the power to set requirements for USPT's employees per 49 U.S.C. § 31502. *See* 49 U.S.C. §§ 31134, 13902. As the Eleventh Circuit's clear and unequivocal precedent makes abundantly apparent, the key factor for this Court to consider is whether the Secretary possesses the power to regulate USPT; and without a doubt, the Secretary possesses the power to have prescribed Plaintiff's qualifications and maximum hours of work at USPT. Certainly, USPT satisfies the first prong of the MCA Exemption.

USPT's position as a motor carrier is only strengthened by the fact USPT uses specific types of passenger vans that are legally classified by the Secretary of Transportation as "commercial motor vehicles." A "commercial motor vehicle" is defined as a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle –

> (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,0001 pounds, whichever is greater;
>
> (B) **is designed or used to transport more than 8 passengers (including the driver) for compensation**;
>
> (C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; **or**
>
> (D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132 (emphasis added). Importantly, the word "or" in the foregoing definition indicates a disjunctive standard, and that any one category of "commercial motor vehicle" may satisfy for purposes of applying the MCA Exemption. The MCA Exemption applies to

employees driving vehicles weighing 10,001 pounds or more, *as well as* vehicles used or designated to transport more than eight passengers for compensation that do not weigh 10,001 pounds. *See Avery v. Chariots For Hire*, 748 F. Supp. 2d 492 (D. Md. 2010).

Defendant's fleet of prison transport vehicles meets the disjunctive requirements. Plaintiff's original Complaint alleged he "did not operate vehicles to transport more than eight (8) passengers for compensation or more than fifteen passengers without compensation" (ECF No. 1, ¶ 23), yet even now he does not allege that the vehicles he operated were not commercial vehicles *designed to transport* more than eight (8) passengers. *See* ECF No. 19, ¶ 26; *see also* 49 U.S.C. § 31132(B). Furthermore, his clearly self-serving allegation cannot rebut the public record evidence of USPT's status as a motor carrier operating a fleet of vehicles "suitable for the transportation of as many as" 12 or 25 passengers. *See* PRISONER TRANSPORTATION SERVICES, LLC-CONTROL U.S. CORRECTIONS, LLC D/B/A U.S.C., 81 Fed. Reg. 122, 41369, *supra*. This fact, combined with its use of "commercial motor vehicles" to transport prisoners in interstate commerce, fully vests the power to set the requirements under 49 U.S.C. § 31502 for Plaintiff to the Secretary. Once again, USPT satisfies the first requirement of the MCA Exemption.

**2.** **Transporting Prisoners in Interstate Commerce Directly Affects the Operation of and Safety of Motor Vehicles in Interstate Commerce Covered by the MCA.**

Plaintiff's singularly alleged job responsibility for Defendant was transporting prisoners in interstate commerce. ECF No. 19, ¶ 25. Operating a transport vehicle is the very type of activity specifically covered by the MCA. For the MCA Exemption to apply, Plaintiff needed to have engaged in "activities of a character directly affecting the safety of operation of motor vehicles in transporting passengers" via public highways in interstate commerce. 29 C.F.R. § 782.2(a)(2). The MCA Exemption applies to any driver employed by a motor carrier

(companies subject to the Secretary's jurisdiction), who is transporting passengers or goods on public highways in interstate commerce. 29 C.F.R. § 782.2; *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37 (5th Cir. 1962) (holding that drivers and driver-helpers engaged in intrastate transportation of empty soft drink bottles were exempt from overtime compensation under § 213(b)(1)); *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 869–70 (S.D. Tex. 2014) (holding the "[MCA] applies to driver/messenger/guards performing work as armed guards on armored trucks"). Indeed, Courts in this District have recently held that operating vehicles on public roadways triggers the MCA Exemption. *See Ehrlich v. Rich Prod. Corp.*, 2018 WL 2017532, at *5 (M.D. Fla. May 1, 2018), *aff'd*, 767 F. App'x 845 (11th Cir. 2019) ("Obviously, these are the kinds of activities that clearly affect highway safety as contemplated by the Motor Carrier Act."). Accordingly, Plaintiff's alleged activities transporting passengers by commercial motor vehicle satisfy the second prong of the MCA Exemption.

USPT is subject to the Secretary's jurisdiction under 49 U.S.C. §§ 13501 and § 31502, satisfying the requirement under the MCA. Plaintiff engaged in "activities of a character directly affecting the safety of operation of motor vehicles in transporting passengers" via public highways in interstate commerce, to satisfy the requirement of MCA. The MCA Exemption applies and excludes Plaintiff from overtime compensation under the FLSA, as such, Plaintiff's Complaint should be dismissed.

3.      **Alternatively, USPT is Subject to the Secretary's Authority Pursuant to the Interstate Transportation of Dangerous Criminals Act of 2000, Excluding Plaintiff from Overtime Compensation.**

USPT engages in the interstate transportation of prisoners, and due to the very nature of the passengers being transported, Plaintiff is excluded from any claim of overtime compensation as an "Extradition Agent" who transports and able to transport prisoners on public roadways.

USPT is covered by the MCA as applied and incorporated by reference under Jeanna's Act, 34 U.S.C. §§ 60101 to 60104. Jeanna's Act provides the Secretary with the power to regulate the maximum hours of service and qualifications of USPT's employees in accordance with 49 U.S.C. § 31502 to bring these companies within in the MCA's ambit. Furthermore, it is clear Plaintiff's work as an "Extradition Officer" is the type of employment covered by the MCA, such as to exempt Plaintiff from overtime compensation under the FLSA pursuant to the MCA Exemption.

a.     ***An Extradition Agent is Subject to the Secretary's Power to Set Qualifications and Maximum Hours of Service Exempting Plaintiff from Overtime.***

Plaintiff transported passengers in interstate commerce for a privately-run prisoner transportation company, further subject to the Secretary's power through Jeanna's Act, and covered by the MCA. Jeanna's Act clearly provides the Secretary the power to prescribe maximum hours of service and qualifications, and pursuant to Jeanna's Act, which seeks to "enhance public safety," 34 U.S.C. § 60101, the "Standards for Private Entities Providing Prisoner or Detainee Services" established to enforce Jeanna's Act states:

> Companies covered under this part must adhere to the **maximum driving time provisions applicable to commercial motor vehicle operators, as set forth by the Department of Transportation regulations as 49 CFR 395.3** which apply regardless of whether a private prisoner transport company is covered by Department of Transportation regulations.

28 C.F.R. § 97.13 (emphasis added). As such, § 97.13 provides the Secretary with the authority to establish maximum hours of service for employees engaged in private prisoner transportation. The Secretary's ability to prescribe requirements regarding maximum hours of service is a prerequisite for the MCA Exemption, which is specifically directed to the Secretary under

13

Jeanna's Act. Jeanna's Act also provides the Secretary with the power to set qualifications for private prisoner transportation companies, and as to drug screening, states:

> (1) Pre-employment testing for controlled substances must be in accordance with applicable State law.
>
> (2) In the event that there is no applicable State law, **pre-employment testing for controlled substances must be in accordance with the provisions of Department of Transportation regulations at 49 CFR 382.301** which will apply regardless of whether a private prisoner transport company is covered by Department of Transportation regulations.

28 C.F.R. § 97.11 (emphasis added). Florida does not have applicable state law concerning pre-employment drug screening. As such, the Secretary possesses the power to set these qualifications for Plaintiff in accordance with 49 U.S.C. § 31502.

By specifically incorporating the DOT regulations into Jeanna's Act, it is ceding power to the Secretary to regulate private prisoner transportation employees' maximum hours of service and qualifications to bring USPT and Plaintiff within the coverage of the MCA. Therefore, USPT is additionally subject to the Secretary's authority under Jeanna's Act, satisfying the first prong for application of the MCA Exemption.

>    **b.**    ***Plaintiff's Alleged Duties Required Transportation of Prisoners in Interstate Commerce, Directly Affecting the Safety of Motor Vehicles.***

Plaintiff allegedly transported prisoners via passenger vehicles for prisons and agencies of local and state governments. These activities are firmly covered by the MCA. There can be no doubt that Plaintiff's transportation of passengers in interstate commerce is the exact character of work found by the courts in *Opelika Royal Crown Bottling Co. v. Goldberg* and *Vallejo v. Garda CL Sw., Inc.* to satisfy the second requirement of the MCA Exemption..

Jeanna's Act incorporates the power of the Secretary and applies it USPT. Plaintiff is an employee covered by the MCA. As incorporated and applied, Jeanna's Act excludes Plaintiff

from the overtime requirements under the FLSA per the MCA Exemption, and his claim for overtime compensation should be dismissed.

Accordingly, even if the facts of Plaintiff's Complaint are taken as true, it nevertheless fails to establish that Plaintiff is entitled to the relief requested. To the contrary, Plaintiff's Complaint establishes that he was an employee wholly exempted from the FLSA's overtime compensation provisions by application of the MCA Exemption. As such, Plaintiff failed to sufficiently show he is entitled to overtime compensation under the FLSA, and his claim should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

**B.**   **Plaintiff's Complaint Must Be Dismissed Because he Failed to Assert Sufficient Facts to Establish He is Entitled to Overtime Compensation as a "Covered Employee" Under 29 U.S.C. § 207.**

Plaintiff, and only Plaintiff, bears the burden of showing he is a "covered employee" under the FLSA. Plaintiff fell woefully short in meeting this exacting burden. "In order to be eligible for FLSA overtime, . . . an employee must first demonstrate that he is 'covered' by the FLSA." *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1376 (S.D. Fla. 2012); *see also Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) ("There is no dispute that [p]laintiffs bear the initial burden of proving that they were covered under FLSA's overtime pay requirement); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627 (5th Cir. 2014). Further, merely pleading the statutory recitals is insufficient to even survive a Motion to Dismiss pursuant to Rule 12(b)(6). *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1377 (S.D. Fla. 2012); *see, e.g., Perez v. Muab, Inc.*, 2011 WL 845818, at *3 (S.D.Fla. Mar. 7, 2011) ("Plaintiff alleges only that 'during her employment with [defendant], she was engaged in commerce or in the production of goods for

commerce.' This is a mere recitation of the statutory language.") (granting dismissal without prejudice).

Plaintiff is not a "covered employee" under 29 U.S.C. § 207. The Corrections Act clarified the types of transportation employees that would be covered under the FLSA. Specifically, the Corrections Act added the following to section 7 of 29 U.S.C. § 207:

> (a) APPLICABILITY FOLLOWING THIS ACT.—Beginning on the date of enactment of this act [June 6, 2008], **§ 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207) shall apply to a covered employee notwithstanding § 13(b)(1) of that Act [the Motor Carrier Exemption**]
>
> (b) Covered employee defined. In this section, the term 'covered employee' means an individual:
>
> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
>
> (2) Whose work, in whole or in part, is defined
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) As affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, **except vehicles**
>>
>> **(i) designed or used to transport more than 8 passengers (including the driver) for compensation**;
>>
>> (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; **or**
>>
>> (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
>
> **(3)** who performs duties on motor vehicles weighing 10,000 pounds or less.

16

SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110–244, 122 Stat. 1572 (2008) (codified in 29 U.S.C. § 207) (emphasis added). Continuing, the Fifth Circuit has explained that the Corrections Act "provides generally that, from the date of the act's enactment, June 6, 2008, the [MCA] exemption does not apply to employees who would otherwise fall within its ambit if the ["covered employee"] requirements are met." *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 291 n.6 (5th Cir. 2014). In other words, "covered employees" are entitled to overtime, and those who do not meet the criteria are not entitled to overtime, and Plaintiff is the latter.

As discussed throughout this Memorandum, Plaintiff's duty is to show that he was allegedly a "covered employee." Plaintiff failed to meet this burden because he is not a "covered employee" under the FLSA for overtime purposes. As such, Plaintiff's Amended Complaint fails to establish that he is, or even could be, an individual entitled to overtime compensation under the FLSA. Accordingly, his claim should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

**C.     The Court Should Dismiss Plaintiff's Recordkeeping Violation Claim Because There is No Private Cause of Action for Alleged Violations of the FLSA's Recordkeeping Requirements.**

Plaintiff asserts just a single, factually devoid sentence to support his claim that USPT violated 29 U.S.C. § 211(c), which is wholly deficient under Rule 8 to support this claim. ECF No. 19, ¶ 41. A complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the Plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 at n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Iqbal*, 556 U.S. at 679.

Plaintiff seemingly alleges USPT failed to keep proper time and pay records as required by the FLSA despite not having a separate claim titled in his Complaint. ECF No. 1, ¶ 41. That is

the full extent of Plaintiff's "factual underpinnings" supporting his claim. Plaintiff provides no information regarding this additional cause of action, but instead attempts to couch legal conclusions in place of any reference to actual events as to either allegedly improperly kept pay records or time records. Accordingly, Plaintiff's claim that USPT violated 29 U.S.C. § 211(c) should be dismissed as well.

**D.      Plaintiff's Amended Complaint Must Be Dismissed Because he Failed to Assert Sufficient Facts to Establish a Plausible Claim for Relief Under 29 U.S.C. § 206.**

Finally, Plaintiff's attempt to avoid complete dismissal by adding a minimum wage claim should also be denied. Plaintiff's Amended Complaint adds a second Putative Class defined as those who did not receive the applicable minimum wage for all hours worked. In support of this claim, Plaintiff alleges nothing but three conclusory, factually-devoid allegations of unpaid minimum wages. *See* ECF No. 19, ¶¶ 29–31, 33, 45. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 678–79. "The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Mirabal v. Metro Parking Corp.*, 2016 WL 9455606, at *2 (S.D. Fla. Oct. 11, 2016) (dismissing a complaint pursuant to Rule 12(b)(6)).

Here, Plaintiff submits no factual allegations necessary to establish a claim for unpaid minimum wages. Instead, he relies on nothing more than conclusory statements that are insufficient to survive scrutiny pursuant to Rule 12(b)(6). Plaintiff only added a minimum wage claim after Defendant filed its original Motion to Dismiss (ECF No. 9) explaining why Plaintiff is not entitled to overtime. Defendant should not be subjected to ongoing litigation and Plaintiff's unfounded fishing expedition in hopes of conducting expensive discovery by alleging such a transparent allegation to avoid dismissal. Accordingly, Plaintiff's Amended Complaint must be dismissed in its entirety.

## IV.     CONCLUSION

USPT transports prisoners in commercial motor vehicles in interstate commerce, an employer covered by the MCA, and subject to the Secretary's power. USPT is a privately-run prisoner transportation company, subject to Jeanna's Act. Plaintiff drove prisoners in commercial motor vehicles designed to carry more than eight (8) passengers affecting safety of others in interstate commerce, making him an employee covered by the MCA. The Secretary's power to regulate USPT, and Plaintiff's position as an "Extradition Agent, exclude Plaintiff from recovering overtime compensation under the MCA Exemption. Further investigation or discovery will only support that the Plaintiff is exempt from overtime pursuant to the MCA Exemption, barring Plaintiff from the relief claimed in her Complaint.

Furthermore, Plaintiff failed to show he was a "covered employee" under 29 U.S.C. § 207 of the FLSA or that he was not paid minimum wage for all hours worked. Plaintiff's allegations are simply not sufficient to establish he is a "covered employee" or a minimum wage

violation under the FLSA. Accordingly, Plaintiff has not made a plausible showing that he is actually covered by the FLSA and entitled to any relief, and therefore, Plaintiff's Amended Complaint should be dismissed. Finally, Plaintiff's contentions that Defendant failed to keep accurate records under 29 U.S.C. § 211(c), lack any reference to actual facts, fail to meet federal pleading standards, and should be dismissed in accordance with applicable pleading standards.

Therefore, Defendant respectfully requests this Court to grant its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as Plaintiff is not entitled to the relief requested.

Respectfully submitted,

By: */s/ Elizabeth H. Joiner*
    Elizabeth H. Joiner, Florida Bar No. 0107843
    **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
    Post Office box 41099
    Jacksonville, Florida 32203
    Telephone: (904) 356-8900
    Facsimile: (904) 356-8200
    ejoiner@constangy.com

- AND -

    Gregory J. Northen, Ark. Bar # 2011181*
    Trial Attorney
    Abtin Mehdizadegan, Ark. Bar # 2013136*
    Trial Attorney
    **CROSS, GUNTER WITHERSPOON**
        **& GALCHUS, P.C**.
    500 President Clinton Avenue, Suite 200
    Little Rock, Arkansas 72201
    Phone: 501-371-9999 / Fax: 501-371-0035
    E-mail: gnorthen@cgwg.com | abtin@cgwg.com

    *Pro Hac Vice Application Forthcoming*

**CERTIFICATE OF SERVICE**

I certify that, on September 9, 2019, I electronically filed the foregoing by using the

CM/ECF system, which will serve a copy on the following:

Brandon J. Hill, Esq.
Wenzel Fenton Cabassa, P.A.
1110 North Florida Ave., Ste. 300
Tampa, FL 33602
Telephone: (813) 337-7992
bhill@wfclaw.com
jcornell@wfclaw.com


/s/ Elizabeth Joiner
        Elizabeth Joiner