UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEVIN LANGELLIER,**

**Plaintiff,**

**v.**                                                    **Case No:  6:19-cv-1316-Orl-37EJK**

**BREVARD EXTRADITIONS INC.,**

**Defendant.**

_____/

## ORDER

This cause comes before the Court on the parties' Joint Motion to Approve Settlement Agreement (the "Motion") (Doc. 78), filed October 19, 2020. Upon consideration, the Motion is denied without prejudice.

## I.    BACKGROUND

In July 2019, Plaintiff, Kevin Langellier, initiated this action against Defendant, Brevard Extraditions Inc. ("Brevard Extraditions"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1.) After Langellier filed his Complaint, Opt-in Plaintiffs Delethia Nuckols, Stephen Joshua Bauer, Ryan Gene Rivera, Erick Castelin, Michael Todd Dunn, and Craig Cipullo consented to join in the action. (Docs. 39–41; 44; 63; 78-1.) Langellier alleges that, from July 2018 to February 2019, he worked as an Extradition Agent for Defendant. (Doc. 19, ¶ 24.) He also alleges that during the course of his employment, his employer failed to pay him minimum wage for all hours worked as required by the FLSA. (*Id.* ¶ 5.) Defendant denied liability for Langellier's claims. (Doc. 66.) However, Plaintiff, Opt-in Plaintiffs, and Defendant have negotiated a compromise and settlement of Plaintiff's and Opt-in Plaintiffs' claims and filed a motion for approval of the settlement agreement (the "Settlement Agreement"), pursuant to *Lynn's*

*Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 78-2.)

## II.    STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district

court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions

## III.    DISCUSSION

### A.  The Settlement Amount

According to the Settlement Agreement, Langellier will receive $2,500.00, Nuckols will receive $2,500.00, Bauer will receive $1,000.00, Rivera will receive $3,000.00, Castelin will receive $1,000.00, Dunn will receive $1,500.00, and Cipullo will receive $1,000.00. These sums represent Plaintiff's and Opt-in Plaintiffs' "claim for damages under the FLSA." (Doc. 78-2 at 1.) However, neither the Motion nor the Settlement Agreement informs the Court how much the Plaintiff and Opt-in Plaintiffs will receive, specifically, for each of their FLSA minimum wage claims and for liquidated damages. (*See* Docs. 78; 78-2.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wage compensation *plus an additional, equal amount, as liquidated damages*. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . in an additional equal amount as liquidated damages."). Thus, the parties should clarify whether Plaintiff and Opt-in Plaintiffs are receiving an amount of liquidated damages equal to their unpaid minimum wage compensation.

### B.  Release

In return for payment, Plaintiff and Opt-in Plaintiffs have agreed to the following release:

> The Settling Plaintiffs each hereby releases and forever discharges Defendant (including its predecessors, parents, subsidiaries, affiliated organizations (including U.S. Corrections, U.S. Prisoner Transport, Prisoner Transport Services LLC, and PTS of America), benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal

from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

> representatives) (collectively, the "Released Parties") from any and
> all claims for unpaid wages, unpaid compensation, or liquidated
> damages he has, had, or hereafter may have against Defendant
> arising out of or based upon their claim for unpaid wages owed by
> Defendant (including, without limitation, any and all unpaid
> minimum wage, overtime, or other unpaid wages or compensation
> claims under the FLSA or under any other statutory, contract, or
> common law).

(the "Release") (Doc. 78-2, ¶ 4.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the
employer extracts a gratuitous (although usually valueless) release of all claims in exchange for
money unconditionally owed to the employee" and therefore, such releases "confer[] an
uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729
F. Supp. 2d 1346, 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that
contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352. This Court has
previously held that "a general release must be narrowly tailored to: (1) the claims asserted in the
instant action; and (2) the named defendants." *Schultz v. Tartini at Rock Springs Ridge*, No. 6:17-
cv-815-Orl-37KRS, 2017 U.S. Dist. LEXIS 231140, 2017 WL 11063381, at *3 (M.D. Fla. Nov.
16, 2017) (Dalton, J.).

Here, the Release is not limited to the named defendant nor the claims stated in this lawsuit.
Instead, the Release includes other, non-FLSA wage claims. Specifically, the Settlement
Agreement releases Defendant and some non-parties from claims arising "under any other
statutory, contract, or common law." (Doc. 78-2, ¶ 4.) This is the sort of pervasive, overly broad
release that runs afoul of the FLSA because it attempts to release claims unrelated to those
presented by Plaintiff's Complaint without justification. Further, the Release is bestowed on a host
of individuals and entities, including unnamed predecessors, subsidiaries, officers, employees,
agents, attorneys, and assigns. (Doc. 78-2, ¶ 4(a).) The Motion does not address whether Plaintiff

and Opt-in Plaintiffs know who is being released or why all of these individuals and entities should enjoy the benefit of this release. *See Rivera v. U.S.A. Transporter Servs.*, No. 6:16-cv-2158-Orl-37TBS, 2017 U.S. Dist. LEXIS 230261, 2017 WL 11049718, at \*4 (M.D. Fla. Apr. 7, 2017) ("[A] general release may not be used to release a non-party.") The parties should tailor the Release to the named defendant and the claims asserted in this lawsuit.

### C.  Covenant Not to Sue

The Settlement Agreement also contains a covenant not to sue. (Doc. 78-2 at 3.) Courts in this District have generally rejected covenants not to sue in FLSA settlement agreements, finding them to be unnecessary and redundant. *See Parsel v. Orgullo Latino LLC*, No. 6:19-cv-247-Orl-37LRH, 2019 U.S. Dist. LEXIS 235475, 2019 WL 11504665, at \*3 (M.D. Fla. May 7, 2019); *Vermeer v. Kautter Wengold Mgmt. Grp., LLC,* No. 6:17-cv-2191-Orl-22TBS, 2018 U.S. Dist. LEXIS 234505, 2018 WL 8576500, at \*21 (M.D. Fla. Aug. 14, 2018); *Leleux v. Covelli Family Ltd. P'ship*, No. 6:17-cv-747-Orl-37TBS, 2017 U.S. Dist. LEXIS 182691, 2017 WL 5125886, at \*9 (M.D. Fla. Oct. 18, 2017). Therefore, the undersigned cannot recommend approval of a settlement agreement containing such a provision.

## IV.    CONCLUSION

Upon consideration of the foregoing, the parties' Joint Motion to Approve FLSA Settlement Agreement (Doc. 78) is **DENIED WITHOUT PREJUDICE**. The parties may file a renewed motion, along with their settlement agreement, **on or before February 16, 2021**.

**DONE** and **ORDERED** in Orlando, Florida on February 2, 2021.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE