# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**KEVIN LANGELLIER**, Individually and §
On Behalf of All Others Similarly Situated, §
　§
*Plaintiff*, §
　§
vs. §**CASE NO.6:19-CV-1316**
　§
**BREVARD EXTRADITIONS INC.** §
**d/b/a U.S. PRISONER TRANSPORT** §
　§
*Defendant.* §

## SECOND JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

Plaintiffs Kevin Langellier, Ryan Rivera, Erick Castelin, Jr., Delethia Knuckols, Stephen Joshua Bauer, Michael Todd Dunn and Craig Cipullo ("Plaintiffs"), and Brevard Extraditions, Inc. d/b/a U.S. Prisoner Transport ("Defendant"), (Plaintiffs and Defendant collectively the "Settling Parties"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), jointly move for Court approval of the their attached FLSA settlement agreement. In further support hereof, the Settling Parties state as follows:

### *Supporting Facts*

1. This FLSA minimum wage case was heavily litigated in the Middle District of Florida.

2. Named Plaintiff Kevin Langellier originally filed this instant action on July 17, 2019, alleging violation of the Fair Labor Standards Act's (the "FLSA") minimum wage and overtime provisions. (Doc. 1).

3. After a round of initial briefing, Langellier amended his Complaint and reducing his claim to alleging only a violation of the FLSA's minimum wage provisions. (*See* Docs. 9, 19, 22, 34, 38, 43, 45).

4. The operative Complaint alleges that Defendant failed to pay Plaintiffs minimum wage under the FLSA. Defendant has at all times denied Plaintiffs' allegations, and also denied having ever employed Plaintiffs. (Docs. 19, 76).

5. Following the filing of the amended Complaint, Opt-In Plaintiffs Ryan Rivera, Erick Castelin, Jr., Delethia Knuckols, Stephen Joshua Bauer, and Michael Todd Dunn filed consent-to-join forms in this matter. (Docs. 39, 40, 41, 44, 63).

6. Discovery in this case was extensive. Both sides conducted multiple depositions (including to both parties and non-party witnesses), exchanged thousands of pages of documents, and obtained documents from third-parties. Some depositions were required to be conducted over multiple days due to witness scheduling issues, and every Plaintiff was deposed. During discovery, Defendant provided records relating to time

worked, pay, and policies by Defendant and its related entities: U.S. Corrections, U.S. Prisoner Transport Services LLC, and PTS of America.

7. As reflected by the docket, briefing in this case was also initially extensive. Multiple motions to dismiss were filed (Docs. 9, 22), stipulations and briefs in opposition (Docs. 34, 43), and a motion for conditional certification, brief in opposition, and supplemental authority relating to same were filed as well. (Docs. 59, 62, 68, 69).

8. The Parties also attended Mediation, albeit unsuccessfully, on May 26, 2020. (Doc. 71).

9. It was not until after the close of discovery, which was July 31, 2020, that the Parties were finally able to negotiate a full resolution of this matter. Additionally, another former employee, Craig Cipullo, retained Plaintiffs' counsel indicating his desire to join this lawsuit. During settlement negotiations, counsel for both Parties exchanged information relating to Mr. Cipullo's employment with Defendant and reached an agreement as to his claims on the same criteria utilized for the Named Plaintiff and Opt-in Plaintiff. Accordingly, the Parties desire to include Craig Cipullo in this matter in an effort to resolve any outstanding claims, and Mr. Cipullo has attached hereto as **Exhibit A** his Consent to Join.

10. To avoid the risks and unknowns, as well as the costs of trial, the Parties desire to fully and finally resolve this action with prejudice.

Accordingly, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Parties jointly move for Court approval of the attached FLSA settlement agreement.

11. After a full review of the facts and information, the Parties, who have been represented by counsel at all times, agree that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

12. Moreover, as set forth below, fees and costs were agreed upon separately and without regard to the amount paid to the Plaintiffs.

13. The Settling Parties have submitted a prior Settlement Agreement and Joint Motion to Dismiss in this matter. (Doc. 78). After review, the Court denied the Joint Motion to Dismiss setting forth concerns with three provisions. (Doc. 83). The Settling Parties have amended their Settlement Agreement to address the Court's instructions and now renew their request for approval and dismissal of this matter in its entirety.

## **MEMORANDUM OF LAW**

There are two ways in which claims for overtime compensation under the FLSA may be compromised or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id.*

The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

### I.  The Settlement.

The Settlement Agreement is attached hereto as **Exhibit B**. Under the terms of the Settlement Agreement, Defendants shall pay to Plaintiffs the amount of $12,500.00 for their claim for damages under the FLSA, apportioned in the amounts as set forth in Exhibit A. Considering that the claims at issue arise only under the FLSA's minimum wage provision, and that a majority of the Plaintiffs worked for Defendant for a fairly limited time

5

for Defendants, these amounts fairly balance the monetary amounts at issue in the case with the risks inherent in proceeding with litigation rather than settling. These amounts take into consideration the number of actual days worked, the individualized hourly rate of pay per Plaintiff, and records relating to working hours maintained by Defendant.

Importantly, the settlement does not require Plaintiffs to waive or release any claims other than their minimum wage claims against Defendant. Nor does it require Plaintiffs to agree to any terms, such as confidentiality, non-participation in other claims, or a prospective waiver of any rights, that this Court has previously ruled to be impermissible in the context of an FLSA settlement. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010). The parties and their counsel tried very hard to ensure this Court's preferences from *Hydrary* for FLSA settlements were carefully adhered in an effort to facilitate Court approval of their settlement. In fact, the agreement used by the Parties is nearly identical to the agreement approved by the Court. Further, the Parties have revised the terms of their Settlement Agreement to address he concerns raised by this Court, such as explaining the structure of the settlement payments, limiting the released entities, and eliminating the covenant not to sue. (Doc. 83).

The settlement also provides that Defendant will pay Plaintiffs' counsel the sum total of $15,000.00 in fees and costs. Plaintiffs' fees and costs were negotiated separately from the amount payable to Plaintiffs under this settlement. The Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs is fair and reasonable in light of the stage of the proceedings and the work performed to date by Plaintiffs' counsel. In fact, Plaintiffs' counsel had expended considerable more in fees and costs than they are seeking to collect.

## II.     A "Bona Fide" Dispute Exists.

*Lynn's Food Stores* permits approval of a compromise resolving a "bona fide dispute over FLSA provisions." *Dees*, 706 F. Supp. at 1241. Parties requesting review of an FLSA settlement must provide enough information to the Court to examine the bona fides of the dispute. *Id.*

The Settling Parties' respective positions on the merits of the case have been briefed. Briefly, Plaintiffs worked as Extradition Agents which required extensive travel on busses and vans designed to securely transport prison inmates among secured facilities throughout the United States. The crux of this entire lawsuit is whether Plaintiffs worked in excess of the hours recorded by Defendant and, if so, whether the Fair Labor Standards Act ("FLSA") was violated by the Plaintiffs not receiving the minimum wage of $7.25 per hour for every hour allegedly worked. Defendants, of course,

7

dispute this allegation and contend that it paid Plaintiffs and other Extradition Agents at all times in conformance with the FLSA.

In short, the Settling Parties agree that a bona fide dispute exists as to whether Plaintiffs received at least $7.25 per hour for every hour of work performed on behalf of Defendant.

### III. All Factors Relevant to the "Fairness" of the Settlement Weigh in Favor of Approval.

Although *Lynn's Food Stores* determined that the settlements at issue in that case were unfair, it did not specify criteria for evaluating the fairness of proposed compromises under different circumstances. *See Dees*, 706 F. Supp. 2d at 1240. This Court has noted that the factors for evaluating the fairness of a class action settlement provide a familiar starting point, including:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel.

*Id.* at 1241 (citations omitted). Here, all factors weigh in favor of approval of the settlement.

### a. *There is no fraud or collusion behind the settlement.*

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to plaintiffs seemed fair.

8

*See Bonilla v. Shiner's Car Wash*, 2014 U.S. Dist. LEXIS 66297, at * 5 (M.D. Fla. 2014). Here, each party was independently represented by counsel with substantial experience litigating FLSA claims. As evidenced by the extensive court record in this case, counsel advocated on behalf of their respective clients vigorously. There was no fraud or collusion behind the settlement.

    b.    *<u>The complexity, expense, and length of future litigation militate in favor of the settlement.</u>*

Continuing to litigate the claims the Parties have resolved and for which the Parties now seek Court approval, would require both sides to incur significant additional fees and costs at trial. Both sides would bear some risk if the claims that have been settled proceeded to trial, and on appeal. Plaintiffs would risk recovering nothing, and Defendant would risk the possibility of an adverse judgment and fee award. The losing side at trial would likely appeal, further lengthening the litigation. It is in the best interests of all the Parties to settle -- rather than continuing to litigate -- this matter.

    c.    *<u>The stage of the litigation weighs in favor of approval of the settlement.</u>*

This case was litigated for over a year and only settled after the completion of extensive discovery and analysis of detailed records relating to Plaintiffs' work for Defendant. Simply put, each side was aware of the other's factual and legal arguments, along with the evidence supporting

same. The Parties were in a position to thoroughly evaluate the merits of their respective claims and defenses and the costs of continuing to litigate when the matter was resolved.

### d. *Plaintiffs' probability of success on the merits is uncertain.*

As discussed above, Plaintiffs' probability of success on the merits is not a certainty. Defendant contends that Plaintiffs were paid for all hours worked, as evidenced by sufficient records, while Plaintiffs argue the evidence obtained during discovery is incomplete and inaccurate. Settlement mitigates against the risk that Plaintiffs might recover nothing if they proceeded to trial, while Defendant can avoid incurring more fees and costs while also obtaining an outcome certain for multiple claims against it.

### e. *The Parties weighed the opinions of counsel in deciding whether to settle.*

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle.

## IV. The Attorneys' Fees to be Paid as Part of the Settlement are Fair and Reasonable.

Finally, the Settling Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs ($15,000.00) is fair and reasonable. The Settling Parties advise the Court that the attorneys' fees and costs to be paid by Defendant under the Agreement are not based upon the

amounts claimed to be owed to each Settling Plaintiff, such that there is no correlation between the amount of consideration to be paid to the Settling Plaintiffs and the attorneys' fees and costs to be paid by Defendants. Rather, the attorneys' fees and costs in this case were analyzed and reviewed in addition to -- and completely separate from -- the specific amounts claimed by each of the Plaintiffs. As explained in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), where:

> [T]he plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

*Bonetti*, 751 F. Supp. 2d at 1228; *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*)..

Such is the case here. The attorneys' fees and costs allocated to Plaintiff's counsel were negotiated separately from the amount to be paid to Plaintiffs and without regard to the amount Defendant had agreed to pay to the Settling Plaintiffs. As such, the recovery by the Plaintiffs was not adversely affected by the amount of the attorneys' fees and costs paid to their counsel.

11

Case 6:19-cv-01316-RBD-E_K    Document 88    Filed 03/02/21    Page 12 of 14 PageID 462

12

## **CONCLUSION**

The Court should approve the settlement of this action. The settlement sum fairly balances the amounts Plaintiffs would seek at trial against the risk that Plaintiffs might recover nothing if the case were to proceed. Additionally, Plaintiffs' counsel will receive a reasonable fee in connection with the settlement. All factors germane to the Court's consideration of the fairness of the settlement weigh in favor of approval.

**WHEREFORE**, the Settling Parties respectfully request that this Honorable Court

        (i)     grant this Motion;

        (ii)    approve the settlement of this matter; and

        (iii)   enter an Order dismissing this case with prejudice.

DATED this 2nd day of March, 2021.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| By: /s/ *Gregory J. Northen* | By: /s/ *Brandon J. Hill* |
| *Attorneys for Defendant* | *Attorneys for Plaintiffs* |

ELIZABETH H. JOINER
Florida Bar No. 0107843
CONSTANGY, BROOKS, SMITH
 & PROPHETE, LLP
Post Office Box 41099
Jacksonville, Florida 32203
Telephone: (904) 356-8900
Facsimile: (904) 356-8200
ejoiner@constangy.com

GREGORY J. NORTHEN
*Admitted Pro Hac Vice*
ABTIN MEHDIZADEGAN
*Admitted Pro Hac Vice*
CROSS, GUNTER, WITHERSPOON
 & GALCHUS, P.C.
500 President Clinton Avenue
Suite 200
Little Rock, Arkansas 72201
Telephone: (501) 371-9999
Facsimile: (501) 371-0035
gnorthen@cgwg.com
abtin@cgwg.com

**Attorneys for Defendant**

AMANDA HEYSTECK
Florida Bar Number:
BRANDON J. HILL
Florida Bar Number: 37061
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: aheysteck@wfclaw.com
Email: bhill@wfclaw.com

**Attorneys for Plaintiffs**