UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEVIN LANGELLIER,**

          **Plaintiff,**

v.                                      Case No:  6:19-cv-1316-Orl-37EJK

**BREVARD EXTRADITIONS INC.,**

          **Defendant.**

                                          /

**REPORT AND RECOMMENDATION**

This cause comes before the Court on the parties' Second Joint Motion to Approve the Parties' Settlement Agreement (the "Motion"), filed March 2, 2021. (Doc. 88.) Upon consideration, I respectfully recommend that the Motion be granted.

**I.   BACKGROUND**

In July 2019, Plaintiff, Kevin Langellier, initiated this action against Defendant, Brevard Extraditions Inc. ("Brevard Extraditions"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1.) After Langellier filed his Complaint, Opt-in Plaintiffs Delethia Nuckols, Stephen Joshua Bauer, Ryan Gene Rivera, Erick Castelin, Michael Todd Dunn, and Craig Cipullo consented to join the action. (Docs. 39–41; 44; 63; 78-1.) Langellier alleges that from July 2018 to February 2019, he worked as an "Extradition Agent" for Defendant. (Am. Compl., Doc. 19 ¶ 24.) During the course of his employment, Brevard Extraditions allegedly failed to pay Langellier and others similarly situated to him minimum wage for all hours worked as required by the FLSA. (*Id.* ¶ 5.) Brevard Extraditions denied liability for Langellier's claims. (Doc. 66.) However, Langellier, Opt-in Plaintiffs, and Brevard Extraditions have negotiated a compromise and settlement of Langellier's and Opt-in Plaintiffs' claims and filed a motion for

approval of the settlement agreement (the "Settlement Agreement"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 88-1.)

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353.

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting

*Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

### III.   DISCUSSION

####   a.   Settlement Sum

According to the Settlement Agreement, Langellier and Nuckols will receive $1,250.00 in unpaid minimum wage damages, Rivera will receive $1,500.00 in unpaid minimum wage damages, Dunn will receive $750.00 in unpaid minimum wage damages, and Bauer, Castelin, and Cipullo will each receive $500 in unpaid minimum wage damages. Langellier and Opt-in Plaintiffs will each receive an amount in liquidated damages equal to their unpaid minimum wage compensation.[2] (Doc. 88-1 at 2–3.) Langellier and Opt-in Plaintiffs each originally sought more in minimum wage compensation than what they were offered in the Settlement Agreement. (Docs. 35 at 2; 50 at 2; 52 at 2; 54 at 2; 57 at 2.) Because Langellier and Opt-in Plaintiffs will receive less than the amount to which they claimed they were entitled under the FLSA, they have compromised their claims within the meaning of *Lynn's Food,* 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wage compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages … in an additional equal amount as liquidated damages."). On review, I find the settlement sums that Langellier and Opt-in Plaintiffs have agreed to accept in satisfaction of their respective claims to be fair and

---

[1] *See Bonner v. City of Prichard*, *Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).
[2] The Settlement Agreement states that Dunn will receive $1,500.00 "which represents $1,250.00 for his claim for back wages under the FLSA and an additional, equal amount as liquidated damages." (Doc. 88-1 at 2–3.) The parties clarified that Dunn will receive $750 as liquidated damages (Doc. 90 at 1); thus, the Court interprets the reference to $1,250.00 as a scrivener's error.

reasonable in comparison to their original claims, considering that all parties are represented by counsel and wish to avoid the risk and expense of further litigation. I also find these amounts to be fair in relation to the nature of the dispute between the parties contesting Langellier's and Opt-in Plaintiffs' entitlement to minimum wage payments. Thus, I find that the settlement sums represent a fair resolution of a *bona fide* dispute between the parties and that Langellier and Opt-in Plaintiffs have not unfairly compromised their claims.

### b. Attorney's Fees

Langellier's and Opt-in Plaintiffs' attorney will receive a total of $15,000.00 for fees and costs. (Doc. 88-1 at 3.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that this amount was negotiated separately from the amount received by Langellier and Opt-in Plaintiffs, and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 88 at 10–11); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### c. Release

The parties' Settlement Agreement contains the following release provision:

> The Settling Plaintiffs each hereby releases and forever discharges Defendant (including any organizations who could be claimed to be a joint employer under the FLSA for purposes of the claims asserted in the Lawsuit (including U.S. Corrections, U.S. Prisoner Transport, Prisoner Transport Services LLC, and PTS of America) who were identified in the discovery phase of the Lawsuit, (collectively, the "Released Parties") from any and all claims for unpaid wages, unpaid compensation, or liquidated damages he has, had, or

> hereafter may have against the Release[d] Parties arising out of the claims asserted in the Lawsuit.

(the "Release") (Doc. 88-1, ¶ 4.a.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee," and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

The presiding District Judge has previously held that "a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party." *Arguelles v. Noor Baig, Inc.*, 6:16-cv-2024-Orl-37TBS, 2017 U.S. Dist. LEXIS 26024, at *3 (M.D. Fla. Feb. 24, 2017) (footnote omitted). Here, the Release does not require Langellier and Opt-in Plaintiffs to release unknown claims that are unrelated to their wage claim in the present case. Further, the Release is limited to identified entities that could be considered joint employers. *See Beard v. Steak N Shake Operations, Inc.*, No. 6:16-cv-1154-Orl-41TBS, 2017 U.S. Dist. LEXIS 223490, at *12 (M.D. Fla. Nov. 3, 2017) ("A release by Plaintiff of only those persons and entities which come within the definition of 'employer,' in 29 U.S.C. § 216(b), would not be overbroad and would give Defendant the finality it seeks.") Accordingly, the undersigned finds that the release of identified entities that could be considered joint employers does not preclude approval of the Settlement Agreement. Alternatively, if the Court finds that the Release is not fair and reasonable, the parties have included a severability provision in the Settlement Agreement that would allow the Court to limit the Release to the named Defendant.

IV.     RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Second Joint Motion for Approval of FLSA Settlement Agreement (Doc. 88);

2. **APPROVE** the Settlement Agreement (Doc. 88-1), or **ALTERNATIVELY,** if the Court finds that the Release undermines the fairness of the settlement, strike the release of non-parties, and as modified, approve the Settlement Agreement;

3. **DISMISS** the case with prejudice; and

4. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1. **If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on March 30, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE